**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **In re:** | ) | **CASE NO. 1:09 MC 0053** |
| | ) | |
| **Extradition of Daniel Wepplo** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Memorandum of Opinion and Order** |
| | ) | |
| | ) | |

### INTRODUCTION

This matter is before the Court upon respondent's Motion for Bail/Bond Pending Extradition Hearing. For the reasons that follow, the motion is GRANTED.

### FACTS

Daniel Wepplo (hereinafter "respondent"), a United States citizen, was arrested on June 17, 2009, pursuant to an arrest warrant issued upon the request of the Mexican government, which is seeking extradition. The state of Veracruz, Mexico charged him with sexual abuse of a minor (hereinafter "A.S."), and issued an arrest warrant on May 17, 2007. The Mexican arrest warrant was based on the statements of A.S., A.S.'s father, and a maid in the household given to

1

the Veracruz prosecutor's office on June 28, 2006. The abuse allegedly occurred from September through December 2005. Respondent first became aware of the allegations against him on the date he was arrested, approximately three years after the statement was given to the Veracruz prosecutor's office.

Respondent was a friend of A.S.'s father, Joseph Simcox (hereinafter "Simcox"), visited her family frequently, and lived with her family for a time in Mexico. Respondent and A.S.'s mother, Claire Simcox (hereinafter "Claire"), became romantically involved. At the end of January 2006, while A.S. was in France with her grandmother, Claire fled Mexico with her other four children to escape Simcox's alleged abuse of her and the children. Simcox immediately went to France to retrieve A.S. and returned with her to Mexico where they currently live. Respondent moved to Ohio to be near Claire in 2006 after she fled with the children. Claire filed for a civil protection order in the domestic relations division of the Lorain County Common Pleas Court prohibiting Simcox from contacting her or the children living with her. The order was issued on February 7, 2006. Simcox filed a petition under the Hague Convention seeking return of the children on January 12, 2007. The district court issued its order on June 27, 2007, and Claire appealed. The Sixth Circuit reversed and remanded the case to the district court on December 28, 2007. Respondent and Claire are currently living together in Ohio with Claire's other four children. Respondent now moves the Court to grant his release on bail pending the extradition hearing. The United States, on behalf of Mexico, opposes the motion. A bond hearing was held on July 7, 2009.

**ANALYSIS**

There is a presumption against bail in an extradition case. *Wright v. Henkel,* 190 U.S. 40, 63 (1901). The United States' overriding interest when it has entered into an extradition treaty with another nation is "complying with treaty obligations and producing extradited persons." *United States v. Hills,* 765 F. Supp. 381, 385 (E.D. Mich. 1991) (citing *United States v. Leitner,* 784 F.2d 159, 160 (2d. Cir. 1986) and *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D. Cal. 1990)). If a respondent awaiting extradition were released on bail and subsequently fled, "the resulting diplomatic embarrassment would have an effect on foreign relations and the ability of the United States to obtain extradition of its fugitives." *Taitz,* 130 F.R.D. at 444. Thus, bail is granted to persons involved in extradition proceedings only under special circumstances. *Wright,* 190 U.S. at 62. Special circumstances are sufficient to overcome the presumption against bail only when "the justification is pressing as well as plain." *Hills,* 765 F. Supp. at 385 (citing *In the Matter of Extradition of Russell,* 647 F. Supp. 1044, 1049 (S.D. Tex. 1986)).

Whether special circumstances exist is left to the sound discretion of the district court. *Beaulieu v. Hartigan,* 554 F.2d 1, 1 (1st Cir. 1977). Previously, courts have found that a high probability of success on the merits, unusual delay in the proceedings, and serious health issues can constitute special circumstances that justify granting bail, though this list is not exhaustive. *Salerno v. United States,* 878 F.2d 317, 317 (9th Cir. 1989); *United States v. Taitz,* 130 F.R.D. 442, 444 (S.D. Cal. 1990).

Respondent argues that the following special circumstances in his case warrant granting of bail:  the justice system in Mexico is corrupt; his anticipated vigorous challenge to the extradition proceedings will result in lengthy delays; and that respondent has a high probability of success on the merits in the underlying case. The Court finds due to the extraordinary facts

3

surrounding this case, this is the rare case where a respondent can indeed establish that special circumstances warranting bail exist.  For the following reasons, respondent's motion must be granted.

> **A.     The nature of Mexico's justice system and anticipated lengthy delays are not special circumstances in this case.**

The Court rejects respondent's arguments relating to the Mexican justice system and to lengthy delays.  First, respondent argues that the justice system in Mexico is corrupt and that law enforcement officers often accept monetary bribes in exchange for favors.  Extraditing courts do not inquire into the conduct of another nation's justice system.  *Demjanjuk  v. Petrovsky,* 776 F.2d 571, 583 (6th Cir. 1985)*, Gallina v.  Fraser,* 278 F.2d 77, 78 (2d Cir. 1960).  That inquiry is left solely to the executive branch of the United States government.  *See Gallina,* 278 F.2d at 78; *Arnbjornsdottir-Mendler v. United States,* 721 F.2d 679, 683 (9th Cir. 1983).  The nature of Mexico's justice system is not a special circumstance.

Respondent next argues that he plans to mount a vigorous challenge to the extradition proceedings, resulting in protracted litigation during which he will remain incarcerated if not granted bail.  Respondent characterizes his anticipated legal challenges as "lengthy delays," which he argues courts have held to be special circumstances.  But the cases in which courts have held that lengthy delays are a special circumstance involve complex cases and delays in the bail and extradition hearings that were not solely the result of challenges by the respondent.  *See United States v. Kirby,* 106 F.3d 855, 863 (9th Cir. 1996) (escapee from prison in Northern Ireland was imprisoned for two years before bail hearing was even held, and extradition proceedings were likely to be subject to delays due to complex nature of the case; respondent was not "exclusively responsible for the delay"); *Taitz,* 130 F.R.D. at 445-46 (case involved 434

counts of fraud that court had to individually examine for probable cause and determine whether each was an extraditable offense; extradition hearing had already been delayed for six months due to the complexity of the evidence). Respondent has presented no evidence that his case is complex or that the extradition hearing and subsequent challenges are likely to be delayed for any reason. Respondent's anticipated vigorous challenge to the extradition proceedings is not a special circumstance.

> **B.  Respondent's high probability of success on the merits in the underlying case constitutes special circumstances based on the extraordinary facts of this case.**

Respondent next argues that he has a high probability of success on the merits in the underlying case. The government argues that respondent cannot establish high probability of success on the merits of the underlying case because only respondent's evidence has been received, making the inquiry one-sided. The government also argues that a high probability of success on the merits applies only to the legal sufficiency of the case– for example, whether an offense is extraditable at all, or a statute of limitations defense. *See Taitz,* 130 F.R.D at 445 (questioning whether the charges described the extraditable offense of fraud or the non-extraditable offense of tax evasion).

The government is correct that in most cases, only conclusory evidence from the requesting government would be available during a bond hearing in an extradition case, making it difficult to assess the respondent's probability of success based on the available facts. The Court also notes that there is a dearth of case law where a court has found a special circumstance based on a high probability of success on the factual merits of the underlying case. But in the few cases where courts have found a special circumstance based on a high probability of success

on the merits of the case, the facts were not as strongly tested as they have been in this case. *See United States v. Ramnath,* 533 F. Supp. 2d 662, 680-682 (E.D. Tex. 2008) (assessing the evidence presented to the court and finding that "[u]nless the evidence available to the United Kingdom prosecutor is considerably stronger than the evidence proffered to this court, there is a substantial probability that a conscientious jury considering this case in light of all the circumstances" would not convict the respondent of involuntary manslaughter); *In re Extradition of Bowey,* 147 F. Supp. 2d 1365, 1368 (N.D. Ga. 2001) (holding that although the international child abduction charges may have "technical merit," the criminal case against Bowey "may have little prosecutorial merit" because he was the father of the children and no court had awarded either parent permanent custody); *In the Matter of Extradition of Gonzalez,* 52 F. Supp. 2d 725, 738-741 (W.D. La. 1999) (finding that respondents demonstrated they would be successful in contesting probable cause at the extradition hearing based, in part, on facts showing respondents had an alibi). Unlike most extradition cases, in this case the Court has the benefit of prior testimony by Simcox and A.S., and the facts have been tested in three separate judicial proceedings. The factual findings by the Lorain County Court, a United States District Court, and the Sixth Circuit Court of Appeals tend to show that the abuse allegations were fabricated by Simcox and A.S. in retaliation for Claire's decision to leave her husband and take the children with her. For the following reasons, the Court finds that respondent has demonstrated a special circumstance based on a high probability of success on the merits in the underlying case.

      First, the evidence shows that Simcox is controlling, manipulative, and vindictive. The Lorain County Court, in reviewing the civil protection order, found that Simcox engaged in a pattern of domestic violence throughout his marriage to Claire, and that he is "very controlling"

of his family. (Exhibit 3 to Respondent's Motion for Bail/Bond Pending Extradition Hearing.) During the Hague case proceedings, Judge Boyko stated that Simcox's behavior during courtroom proceedings "exhibits an arrogance, a need to be in control and a tendency to act out violently that presents serious concerns such traits have been amplified outside the confines of the courthouse." *Simcox v. Simcox,* 499 F. Supp.2d 946, 953 (N.D. Ohio 2007). The Sixth Circuit reiterated this characterization and went on to describe Simcox's numerous threatening phone calls and emails to Claire's attorneys and to her after the District Court rendered its judgment. *Simcox v. Simcox,* 511 F.3d 594, 600 (6th Cir. 2007).

Testimony during the bond hearing by Alan Hirth, one of Claire's attorneys, revealed that the threatening emails to the attorneys from Simcox have continued on at least a weekly basis through the day prior to the bond hearing. The emails threaten that Simcox "will commence new activity," that "we will be fighting on new turf and as I told you I look forward to the battle if it only provokes more distress in Claire's life," "[y]ou are no match for me in the end," and "I have a lot of surprises for you." (Exhibits C-E to Respondent's Supplemental Brief.) Moreover, Simcox made frequent threatening phone calls to the parents of both Claire and respondent. (Exhibits A-B to Respondent's Supplemental Brief.) On one occasion in October of 2006, he left seven messages on Claire's father's answering machine in less than one hour. The Court had the benefit of listening to a recording of these messages that was offered into evidence at the bond hearing. Simcox engaged in an angry tirade, threatening that "I will be so incredibly vindictive against your daughter legally that you won't know what's gonna happen to you," "I will put every single bit of my energy in this until you are buried beneath so much garbage that you won't be able to get out," and "this will not stop." (Bond Hearing Exhibit B.) Further, more recent

7

postcards to Claire and her other children contain phrases such as "I have started many new cases," "you may learn about what is in store for you," "you don't even know what is going to happen to you," and "I guess I will be seeing you in court again soon." Exhibits Q-R to Respondent's Supplemental Brief. The Court has carefully reviewed Simcox's numerous emails and letters submitted by respondent, and notes that this is only a fraction of the volume of these communications that exist, as represented by respondent's attorneys. Notably, even though June 28, 2006 is the latest date that Simcox could have become aware of A.S.'s allegations of abuse against respondent, Simcox has *never* mentioned the allegations in any of the phone calls, letters, or emails to Claire, her attorneys, or family members that respondent submitted as evidence.

The evidence also shows that Simcox has abused the legal system in the United States. Upon being served with the Lorain County Protective Order, Simcox went to Michigan and obtained a protective order against Claire on behalf of A.S., even though Claire did not reside in Michigan and had no ties there. He admitted in his testimony before the Lorain County judge that he obtained the Michigan protective order to retaliate against Claire. (Exhibit 3 to Respondent's Motion for Bail/Bond Pending Extradition Hearing.) He has no respect for the judicial system, as evidenced by emails to Claire's attorneys stating "I really do not give a f— about Lorain County," "the Hague [case] was a Monkey case," and "I really don't give a damn about courts." (Exhibits D-E to Respondent's Supplemental Brief.) His disregard for the judicial system was also recognized by the Sixth Circuit. *See Simcox,* 511 F.3d at 610 (questioning Simcox's willingness to abide by court rulings). Simcox even attempted to bribe Jenifere Singleton, one of Claire's attorneys, offering her in an email "a bonus of $10,000 no questions asked" if she could help reach "an amicable solution." (Bond Hearing Exhibit A.) He has also

8

threatened to use the Mexican justice system to retaliate against Claire, as noted by the Sixth Circuit. *Id.* at 601 (stating that Simcox threatened to have Claire arrested after she returned to Mexico with the children, as ordered by the District Court).

Perhaps the strongest evidence that Simcox and A.S. have fabricated these allegations against respondent is that both Simcox and A.S. testified twice in the United States after the abuse allegedly occurred, and the abuse was never mentioned during their testimony. Both Simcox and A.S. testified in early 2006 in connection with the Lorain County civil protection order without mentioning allegations of abuse. More importantly, both testified during the Hague custody proceedings and made no mention of the allegations against respondent, who was at the time living with Claire and the other four children. Simcox filed the Hague petition in January 2007, six months *after* he made a sworn statement to the Veracruz prosecutor's office that his daughter had been abused by respondent. The Court finds it incredible that a parent would not mention allegations of sexual abuse of a child by the other parent's live-in lover during a custody hearing. Moreover, Judge Boyko questioned A.S. *in camera* with no other persons present and she made no abuse allegations towards respondent. Ms. Singleton testified that during one of her many conversations with A.S., A.S. explicitly described the sexual relationship between respondent and Claire, but did not allege that respondent sexually abused her. The Court finds it particularly compelling that an adolescent who is comfortable describing the sexual relationship between her mother and her mother's lover would not mention her own abuse by the same individual, especially when she made the allegations public in Mexico during the prior year.

Mr. Hirth also testified that during her open-court testimony in the Hague proceedings,

A.S. "parroted" Simcox's testimony, including his use of certain phrases and words and the manner in which he mimicked his wife's voice, evidencing Simcox's manipulation of and control over his eldest daughter.  A.S.'s testimony during the Hague proceedings and emails to her mother demonstrate that A.S. is very angry at respondent and blames him for the demise of her parent's marriage, but never once alleges that he behaved inappropriately towards her.

Simcox's controlling and manipulative temperament, his threatening behavior, his prior abuse of the judicial system and his threats to abuse it in the future, combined with a complete lack of testimony by Simcox or A.S.  regarding the abuse during the custody proceeding after the allegations were made in Mexico, demonstrate that these allegations are likely false and that respondent has a high probability of success on the merits of the underlying case.  The Court finds that under these extraordinary facts, a special circumstance exists warranting bond.

### C. Respondent is not a flight risk or a danger to the community.

Upon finding that special circumstances exist, the Court must also find that respondent is not a flight risk or a danger to the community prior to granting bond.  *See Kirby,* 106 F.3d at 865; *Gonzalez,* 52 F. Supp. 2d at 735.  Respondent has no criminal history. He has demonstrated strong ties to the community, his passport is expired and has been surrendered, he is the sole source of financial support for Claire and her other four children, and he is employed at Eaton Corporation. The Court finds that respondent is not a flight risk.  Additionally, given respondent's lack of criminal record and the specific facts in this case that strongly indicated the allegations of abuse are false, the Court finds that respondent is not a danger to the community.

### D. Conditions of release.

IT IS ORDERED that the respondent be released provided that:

1. The respondent executes an unsecured bond binding the defendant to pay the sum of twenty thousand dollars ($20,000) in the event the respondent fails to appear as required or fails to surrender for service of any sentence imposed.

2. The respondent shall submit to Pretrial Services supervision as required.

3. The respondent shall participate in the Home Detention component of the Location Monitoring Program and abide by all requirements of the program which will include location monitoring technology at the discretion of the officer. The respondent is restricted to his residence at all times except for employment; religious services; medical treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by Pretrial Services.

4. Respondent must report to the Probation Office in this district within 72 hours.

**CONCLUSION**

For the foregoing reasons, respondent's Motion for Bail/Bond Pending Extradition Hearing is GRANTED. The Extradition Hearing is set for August 28, 2009, at 10:00 a.m.

IT IS SO ORDERED.


   /s/ Patricia A. Gaughan
   PATRICIA A. GAUGHAN
   United States District Judge

Dated: 7/8/09